Good morning your honors. My name is Colin Prince and I represent Christopher Myers. I will watch the clock and try to reserve four minutes for myself. Until last week we had three issues to cover but the decision in United States v Veteroff essentially solves issues two and three. So if I may begin with the state case exists does not mean the federal government can delay indefinitely without notice to the defendant, without notice to the court. That is what the Third Circuit held in Battis and that is what the Tenth Circuit held in Seltzer. The question before you today is whether that's true. I thought the Tenth Circuit said we look at the totality of the circumstances we we require the conclusion of the state proceedings before the federal proceedings can continue. Is that right? I believe that's correct your honor but the key distinction we have here is that the fourth and the sixth have essentially held that if there is a state case that exists per se the federal government can delay. If we look at the totality of the circumstances test which is what you I think you're advocating how does that shake out for your client? Well so I think that's where we get to the full Barker analysis and I think to say the totality of the circumstances I I guess I haven't read that the courts are calling it that but I would I would agree because Barker says it's an ad hoc case-by-case test. So you will I understand you to be advocating and I think this is what Judge Akut is getting at. You don't want to us to adopt a rule that says that the dependency of a state case alone is enough. We should look and see how what what the facts and circumstances are. Exactly. And so my So moving to the first Barker factor here I think there's not really a dispute here. We're at 22 to 24 months length of delay were twice presumed. Why 24? I thought it was at 22 months. It's 22 months to the actual day when Mr. Myers came into the initial appearance. It's about 24 months until he moved for his first continuance. So the district court actually if you look in there the order actually noted 24 months. I've used 22 because it's dead clear that's when he had his initial appearance. And that's enough. And that's enough. So what about part two? Part two is reason for the delay. The reason for the delay we I am advocating that this court should adopt the particularized showing that the Tenth Circuit adopted and that the district court explicitly rejected. And it called it a heightened standard but it's not really. So under both cases of the Seventh Circuit suggests even though that it's looks at it on a case-by-case basis as most cases the administrative difficulties and safety concerns presented by parallel prosecutions generally justified delaying the second case. So the government points to the normal events of having an interference with a ongoing state proceeding and the reasons that you would not want to have to a federal and state proceeding going simultaneously. So that's the Seventh Circuit's not a per se rule but just in general it does justify a delay. How does that apply here? How does that apply here? I think it brings us to what the Tenth Circuit said which I think is just common sense. We go to an evidentiary hearing. The government carries the burden to explain the reason for delay. And the Tenth Circuit has just said well you have to explain why there really are logistical problems. You have to show why really there's a and the district court held there are no logistical problems. I know this gets into the real mechanics of our district. Yeah now we're talking about the district court in our case? Correct. Yeah there are no logistical problems. Mr. Myers was held in the exact same cell whether he was on a state case or his federal case. Doesn't that hurt your prejudice analysis? No. Why not? So he would have been in the very same situation maybe even in the very same cell. So I'll flip to the first issue of prejudice is denial of counsel for a year. The Tenth Circuit held in Seltzer that denial of counsel for six months constituted prejudice. So we are now opening up a split where the district court held that denial of counsel was not a problem for a year. And the reason denial of counsel was really important in this case is because Mr. Myers was concerned about ACA eligibility. When he wrote to the district court on May 20th 2016 what he said was quote if there is a finding of guilty on the state charges the US government can seek substantially greater punishment on the instant matter. What he's worried about is that if he pleads if he takes a guilty conviction on first degree on second degree assault he's going to destroy his year mandatory minimum. That happened here? No. But the denial of counsel is he can't move forward on his state case. I mean this is the mechanics that is hard to understand. I see your honor frowning at me. Back up and try one more time. So it didn't happen right? He didn't get an enhancement. Correct. Okay. But imagine you're sitting in solitary confinement in a six by nine foot box and you're facing first degree assault which Mr. Myers did not commit. That is he's being leveraged to take a plea and he finds out. He's in state court. He's in state court. He's being leveraged to take a plea. They're coming to him and saying plead to first degree assault, plead to second degree assault and he's thinking to himself if I do that will that be an ACA predicate? He's terrified of this. Because now he doesn't have a lawyer. He's got a lawyer on the state court. Correct. Who has no capacity to tell him do a categorical analysis on what the effects will be in the federal case. So he cannot move forward on the state case. That's the same lawyer who's supposed to warn him about the immigration effects of the plea. Is that right? There is that. So when you say he cannot move forward, I mean he did move forward right? He resolved his state case. So help me out. So he spent at least from November 2015 to May 2016 unable to move forward in a state case because he has no federal lawyer. So are you saying then he didn't move forward in the state matter, resolving the state matter until he got a lawyer on the federal side? Correct. Who could identify what the consequences would be on the federal side? Yes. Where do I see that? Is that just a matter of looking at the chronology and putting those dots together? That is ER 123. He directly wrote that to the district court which is the quote I read to you. He testified to that at ER 299. He was unsure how to proceed. This is the fundamental question. And the real problem is we're talking about concurrently charged cases. Denial of counsel is so essential in these cases. So you think that not having a lawyer in the in the well not moving forward in the federal case means he didn't get a lawyer in the federal case and that delayed the the resolution of his state court? That's a question essentially correct if the state. The federal prosecutor did not notify him that he'd been indicted, did not notify him of a right to counsel, did not bring him for an initial appearance. So in November 2015, he accidentally finds out he's been indicted and he realizes he cannot resolve his state charges because if he pleads to something, he doesn't know what the consequences are. And this is where I get down to it, Your Honors, is the district court's order is a problem because it doesn't take the role of defense counsel seriously. What we do is not a joke. We go in and we tell our clients what the consequences of what they're charged with is going to be if they take a plea in the state court. They most likely, if it's a related incident on concurrent charges, they probably can't testify. Can I interrupt you again? Your time is almost out and it's important. I'm sorry. He got a sentence that was these are serious charges and he got a sentence such that he would have done this amount of jail time anyway. It's not a case. I can envision a case where this would be a big problem if somebody winds up delaying the state case so long that he winds up doing more time than he would otherwise have served. Is your argument that he did harder time in this pretrial phase because he was on the sixth floor? I'm not understanding your argument. Yes, he sits for six months staring at a wall, terrified that he can't move forward. We're talking actual prejudice. My question is different. Sorry. He didn't do more time, I don't think, because these are serious charges in the state court. So it's not as though he was going to get a sentence in state court of less than 22 months. That's not what you're arguing. Is it in this pretrial holding facility? He was on the sixth floor in solitary confinement. I'm looking for prejudice. He spends at least six months longer on pretrial solitary confinement because he did not have counsel on his federal case and was unable to move forward. I understand. Do you want to save the rest of your time for rebuttal? Yes, Your Honor. That would be great. Thank you. I'm James Gakie. I represent the United States in this case. May it please the Court and counsel. I wanted to go back to Judge Christian's question. The defendant cannot show prejudice here. As this court found in the United States v. Gregory, the prejudice the defendant asserts has to be related to the delay. So why isn't it? I think we finally got to it. Now I understand. He thinks that not having a federal lawyer delayed the resolution of his state case. And as long as that state charge was pending, he was in a harsher confinement. And those factual assertions reviewed for clear error were aired in front of the district court twice. The district court held two hearings in this matter with regard to the defendant's motion to dismiss. One before he was arraigned on the federal charges and once after he was arraigned. The district court did not make that finding. What the district court found was there were numerous delays in the state side. Many of those attributed to the defendant, some not. The defendant switched counsel at least three times on the state side. I'm aware of that. But the district court was also not happy that the federal government wasn't proceeding. It was not. And the federal government also flip-flopped back and forth about the compact. So can you help me just on the prejudice? But the federal government was consistent with regard to the reason the federal government was not moving forward with Mr. Meyer's case was not to interfere with the state court proceeding. How would it interfere? Well, it's the same witnesses. It's essentially going into their case, interfering with the same witnesses. Even if you just arraign him so he gets a lawyer. And there was an opportunity, as one would expect, to do a global resolution, except they didn't have a federal lawyer. And so I appreciate they didn't do a federal, a global resolution, but I'm not so sure the opportunity wasn't lost. So how does it interfere to just arraign him so he gets a lawyer? It could have gone that way. But in this instance, the government elected not to because they did not want to interfere with the state proceedings. Because the government viewed interference would be, we're going to go interview witnesses. It could have also gone against the defendant's interests. If the government goes out, initiates its federal prosecution by arraigning him, we're also going to go out and interview the defense witnesses. We're going to attempt to interview those people. That could result in negative inferences for the defendant. It could, but it seems to me that we're back to, and your argument is that even the rule that the defense wants us to adopt, in this case, as applied, he would not have a speedy trial act violation because of the facts and circumstances. I'm curious about what the government's position is about whether you should be entitled to an absolute rule. Well, the government's view that in this case, an absolute rule would be appropriate, as the court found in Gregory. So are we, the question that I think Judge Grissom and I have as well is whether we should be considering a per se rule that whenever there's a state proceeding, the government is justified in not going forward with the federal proceeding, or whether we should be looking at the 10th Circuit, 7th Circuit, more of a case-by-case analysis. And if so, what would the factors be, or what were the factors in this case? The government's position is this court should adopt the rulings of the other circuits, not the 10th Circuit and the 6th Circuit's rule, and have a per se rule. We should not be interfering with other sovereigns. But you're assuming interference. That's the problem. Yes. You're assuming interference. What makes it interference, per se interference? I mean, you keep repeating, well, you don't want to have the federal proceedings going at the same time as the state proceedings. But why is that interference, just very specifically? It's interference because there's collateral overlap between the cases. There's factual overlap. There's witness overlap. Well, there might be. It depends on the cases, right? It does. And it depends on the witnesses, and it depends on a lot of things. It does. So why should we adopt this blanket rule? That's concerning to both of us, and maybe all three. We don't know yet, but you've got a clear indication two of us are concerned. I understand the Court's concerns, but this is not a case that would have a blanket rule such as that cause problems, constitutional problems. This delay was approximately Now, we're not talking about this case. We're asking about the blanket rule. Again, I just want to be clear. I understand you to be saying that you shouldn't have to look at the facts of this case, that we should adopt a rule that says if there's a state case pending, the federal government doesn't have to go forward. Do I misunderstand your position? No. The government believes that there should be a blanket rule because there should be comity between sovereigns. This Court has often had concerns when we interfere with the actions of other sovereigns, jeopardize their cases, interfere with their proceedings. That said, if the Court were not to adopt a blanket rule, the district court effectively went through the Seltzer prongs. The district court analyzed why is this case not the same as Seltzer, even though it didn't apply that, rejected that standard and called it a heightened standard. The district court found that the key difference in this case was the overlap between the cases. And the district court could not find, under United States v. Gregory, any incidents of prejudice attributed to the delay to this defendant. Counsel says, well, the defendant was six months potentially, six months longer in pretrial detention. He would have been there regardless. No, I can't tell from that. Maybe you can help me on that. There's a part in the transcript where it sounds like everybody in the room knew what they were talking about, about that he was on the sixth floor and that was solitary confinement. And I can't tell whether or not he would have been somewhere else, housed on a different floor, if it hadn't been for these, both of these pending charges. He would have still, he would have still been in the Spokane County Jail. And he would have still been facing these assault charges. It's my understanding from the record that he was, he was in this confinement status because of the severity and the nature of the first degree assault charges he was facing with the state. So even if he'd been brought over on a federal. I think that's his argument. If that, once that's resolved, then he wouldn't have been there. Isn't that his argument? But there's nothing in the record that supports that. Okay. I didn't miss it. I have a couple of questions not relating to this speedy trial issue that I'd like to ask you. One is on the Washington second degree assault and whether it's a crime of violence. We now have Vederoff saying that that statute doesn't meet the aggravated assault prong. In Vederoff we said that. And you don't dispute that there's still an argument on that point? I've read Vederoff over and over again. I've racked my brain to try to distinguish it, but I cannot find a way to distinguish it on the facts of this case. So then I have a question about Robinson where we said that the Washington second degree assault statute is not a crime of violence on the elements clause. And then Stoeckling came down saying that the degree of force for a crime of violence is just the minimal amount of force needed to overcome resistance. Does that require us to revisit our decision in Robinson? Because Robinson relied on Johnson, which said it has to be violent physical force. I wish that it did, but I can't see a way around Robinson and Vederoff together on the facts of this individual case. I mean, I share that. Well, the facts of this case don't matter, right, because we're talking about a categorical determination. This is true. But I think under the holding of Robinson and the holding of Vederoff, I just don't see a way to get this court to revisit it. I wish the court would. So you're not considering the impact of Stoeckling? Not at this juncture, no. But that said. We did not ask you to brief it. Let me ask you about the application of 5G1.3b2 in the sentencing, about whether the district court erred in not having the sentences be concurrent. In your briefing, you didn't address their argument, which was on 5G1.3b. You were just addressing 5G1.3c. So do you want to address b and tell us why the opposing counsel is wrong that the district court erred on that sentencing issue? I think b simply does not apply. This is resolved. Why does b not apply? It seems to apply by its terms. I don't see how. I looked at the PSR, and I do not see how relevant conduct. There's a four-level enhancement in this case. So you're saying it's not. So the state offense and the federal offense were both based on the same incident, as I understand it. They are. But you're saying that under 1b1.3, they don't constitute relevant conduct. I don't. They do not. And why is that? Well, when you look at the examples in the application notes, it's classic relevant conduct. The application notes are concerned with somebody who is charged with a drug quantity in state court and a drug quantity in federal court, and they're related. And because of the way they are, they're not grouped together in the federal charge. They are then essentially doing more time. That is not the case here. We have an enhancement, and it's completely different conduct. There is this assaultive conduct in the state court for which he was sentenced, and there's the possession of the firearm conduct in federal court. So the 1b1.3 refers to acts that were committed during the commission of the offense of conviction. So I understand there were different charges for different offenses, but weren't they all, didn't they all take place during the commission of the offense of conviction? And simultaneously. They did take place simultaneously, but the defendant essentially got credit for that at the state court level. The state court looked to the federal gun charge and reduced the defendant's exposure by approximately two years accordingly. So the defendant essentially in state court was not punished for that same conduct. He was punished for in federal court, which is the possession of the firearm. Where's that in the record? That's in the court's order on sentencing. And so does that make a difference for our determination of whether the two offenses meet the definition of relevant conduct? I think it does, because factually, the court recognized that issue, recognized that the conduct is related, but then analyzed whether they overlap such that he should get a concurrent sentence under 5g3 and rejected it. Okay, we took you over your time. Thank you. Thank you for the argument. And the government would be happy to address the Stokely case. However, I would also note that the government is also in the middle of digesting Vederoff right now, as that case just came down on Friday. And with that limit of the ability to contact our co-counsels over here in the Western District because of the snow and issues of that nature. If the government does seek relief in that case, and it may be necessary to seek a stay of the opinion in this case, and we'll file whatever appropriate paperwork is necessary. Thank you. Thank you. You have a few seconds left. I have a few, Your Honor. The last points I want to make are, Mr. Meyer shouldn't have needed to show prejudice at all. I would urge this court and the clerks to look up United States v. Ingram out of the 11th Circuit. The district court treated this as, unless you show intentional bad faith misconduct by a prosecutor, you've got to show actual prejudice, missing witnesses or something like that. And that's not the law. If you look at Ingram, Ingram is a case of negligence. Agents simply failed to go to a defendant's house and tell him that he'd been charged. The 11th Circuit held they had a 24-month delay, very similar to here. The negligence was very egregious, and he asserted his rights promptly. So even in a negligence case, the 11th Circuit expressly, expressly waived the prejudice requirement. The district court treated, it compared this to Gregory, and essentially held that the only way to waive prejudice is to show bad faith subjective intent by a prosecutor, which I really want to impress on Your Honors, it's impossible. It's impossible. And let's... We're over your time, so please wrap up. Thank you, Your Honors. I would say, last point, this case is going to have wide, wide-ranging effects on our concurrently charged defendants. And if this case doesn't meet a speedy trial violation, we will basically never be able to show one for a concurrently charged defendant. Thank you. Thank you. Okay. We thank both parties for their argument. In the case of United States, D. Myers is submitted. And the next case for argument is Craig Arnold v. Iron Gate Services.
judges: Ikuta, Christen, Choe-Groves